**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. _____**

**USIC LOCATING SERVICES, LLC,**

       **Plaintiff,**

 **v.**

**PROJECT RESOURCES GROUP, INC.,**

       **Defendant.**

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff USIC Locating Services, LLC ("USIC"), by and through undersigned counsel, files this Complaint against Defendant Project Resources Group, Inc. ("PRG") as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     USIC is a limited liability company organized under the laws of Delaware. Its sole member is USIC, LLC, a limited liability company organized under the laws of Delaware. USIC, LLC's sole member is USIC Holdings, Inc., a Delaware corporation with its principal place of business in Indianapolis, Indiana. USIC has offices and performs business operations in the State of Colorado.

2.     PRG is a Colorado corporation with its principal place of business in 5340 S Quebec St, Suite 250S, Greenwood Village, CO 80111.

3.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because USIC and PRG are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     This Court has personal jurisdiction over PRG because PRG is a Colorado corporation that has its principal place of business in the State of Colorado.

5.     Venue is proper in this Court under 28 U.S.C. § 1391 because PRG resides in this judicial district.

## FACTUAL ALLEGATIONS

### Underground Utility Locating and the One Call System

6.     Throughout the country, states have established "One Call" notification centers (including Colorado 811) to facilitate safe excavation around utilities.

7.     Public utility owners have a legal obligation to locate and mark the approximate location of their underground utility lines when they receive requests through a state's One Call notification center.

8.     Instead of employing individuals to mark their lines in response to every One Call (or 811) request, many utility companies contract with a third-party company like USIC to perform the location services. Thus, USIC contracts with many utility owners ("Customers") across the country to locate and mark the Customers' underground utility lines in response to One Call requests.

### USIC's and PRG's Potential Shared Customers

9.     As relevant to this lawsuit, all of the potential shared Customers between USIC and PRG are located outside of Colorado, and the overwhelming majority of USIC's relevant services

provided to these Customers took place outside Colorado. As such, the Customers cannot feasibly be joined as parties to this lawsuit. USIC provides this information in a good-faith effort to identify Customers that are, were, or are potential shared Customers with PRG, and by providing such information does not assume PRG's burden with respect to Rule 19.

10.     To the best of USIC's knowledge, none of the potential shared Customers are incorporated in or have their principal place of business in Colorado. Furthermore, USIC's current contracts with its largest Customers (that are also potential shared Customers with PRG) include forum-selection clauses or else concern performance of services outside Colorado.

11.     Contracts with USIC's Customers (that are, were, or are potential shared Customers) containing forum-selection clauses mandating jurisdiction in states outside Colorado include contracts with the following Customers:

    a.  AT&T Services, Inc. ("AT&T"). AT&T has its principal place of business in Texas and is incorporated in Delaware. None of AT&T's relevant contracts with USIC pertain to services in Colorado. Recent contracts between USIC and AT&T (which concern services outside Colorado) contain forum-selection clauses mandating jurisdiction in Texas or else in states where the damage occurred—all of which are outside Colorado, because USIC does not contract with AT&T for services in Colorado.

    b.  Bright House Networks, LLC. Bright House Networks, LLC, was acquired by Charter Communications, Inc., which is a Delaware corporation with its principal place of business in Connecticut. None of its relevant contracts with USIC pertain

to services in Colorado. Furthermore, its relevant contracts with USIC contain forum-selection clauses mandating jurisdictions outside of Colorado.

c.   Charter Communications Operating, LLC ("Charter"). Charter is a limited liability company with its membership interest owned by Charter Communications, Inc. Charter Communications, Inc., is a Delaware corporation with its principal place of business in Connecticut. Although two of Charter's relevant contracts with USIC pertain to services in Colorado (among other states), both contracts contain a forum-selection clause selecting the United States District Court for the Eastern District of Missouri, or else state court in St. Louis County, Missouri.

d.   Comcast Cable Communications Management LLC ("Comcast"). Comcast is a Delaware limited liability corporation and is a subsidiary of Comcast Corporation, which is incorporated in Pennsylvania and has its principal place of business in Pennsylvania. USIC's current contract with Comcast has a forum-selection clause requiring that lawsuits be brought in federal or state court in Pennsylvania.

e.   Duke Energy Business Services LLC ("Duke"). Duke is a subsidiary of Duke Energy Corporation ("Duke Energy"), which is a Delaware corporation with its principal place of business in North Carolina. Duke Energy Business Services LLC contracts with USIC on behalf of additional Duke Energy entities, including Duke Energy Ohio, Inc. (incorporated in Ohio), Duke Energy Kentucky, Inc. (incorporated in Kentucky), Duke Energy Indiana, Inc. (which appears to have been changed to Duke Energy Indiana, LLC, which is an Indiana LLC whose sole member is Duke Energy), Duke Energy Carolinas, LLC (North Carolina LLC

whose sole member is Duke Energy), Duke Energy Progress, LLC (North Carolina LLC whose sole member is Duke Energy), and Duke Energy Florida, LLC (Florida LLC whose sole member is Duke Energy). None of its relevant contracts with USIC pertain to services in Colorado. Additionally, USIC's current master contract with Duke has a forum-selection clause requiring that lawsuits be brought in federal or state court in North Carolina.

f.  Fayetteville Public Works Commission. Fayetteville Public Works Commission is a North Carolina public authority. None of its relevant contracts with USIC pertain to services in Colorado. Further, USIC's contracts with Fayetteville Public Works Commission contain a forum selection clause requiring that lawsuits be brought in North Carolina.

g.  National Grid USA. National Grid USA is described in a contract as a Massachusetts corporation with offices in Massachusetts, though it appears to be incorporated in Delaware. None of its relevant contracts with USIC pertain to services in Colorado. Further, USIC's contracts with National Grid USA contain a forum selection clause requiring that lawsuits be brought in New York.

h.  Piedmont Natural Gas Co., Inc. ("Piedmont Gas"). Piedmont Gas appears to be a North Carolina company with its principal place of business in North Carolina. None of its relevant contracts with USIC pertain to services in Colorado. Further, USIC's contracts with Piedmont Gas contain a forum selection clause requiring that lawsuits be brought in North Carolina.

      i.    RCN Telecom Services of New York, LP ("RCN Telecom Services of New York"). RCN Telecom Services of New York is a limited partnership registered in New York and Delaware. None of its relevant contracts with USIC pertain to services in Colorado. Further, suits to enforce or interpret a recent contract between RCN Telecom Services of New York and USIC must be brought in New York.

      j.    Starpower Communications, LLC (dba RCN) ("Starpower"). Starpower is or was a subsidiary of RCN Corporation, which itself appears to be a Delaware corporation with its principal place of business in New Jersey (RCN Corporation is not listed as a Colorado business). None of the relevant contracts with USIC pertain to services in Colorado. Further, suits to enforce or interpret a recent contract between Starpower and USIC must be brought in Maryland.

12.    The remaining contracts with USIC's Customers (that are, were, or are potential shared Customers) do not concern the provision of services in Colorado. In fact, to the best of USIC's knowledge, these companies have little or no connection to Colorado at all. Such contracts include those with the following Customers:

      a.    Duke University. Duke University is a private university based in and registered as a non-profit corporation in North Carolina. None of its relevant contracts with USIC pertain to services in Colorado.

      b.    FirstLight Fiber, Inc ("FirstLight Fiber"). FirstLight Fiber is a Delaware corporation with a New York address, which appears to be its principal place of business. None of its relevant contracts with USIC pertain to services in Colorado.

c.  Intersection Parent, Inc. ("Intersection"). Intersection is a Delaware corporation with a New York address, which appears to be its principal place of business. None of its relevant contracts with USIC pertain to services in Colorado.

d.  Lumos Networks of West Virginia, Inc. and Lumos Networks, Inc. (collectively, "Lumos"). Lumos is incorporated in Virginia and appears to have its principal place of business in Virginia as well. Lumos also appears to be part of the Segra corporate family. None of its relevant contracts with USIC pertain to services in Colorado.

e.  Mediacom Communications Corporation ("Mediacom"). Mediacom is a Delaware corporation with its principal place of business in New York. None of its relevant contracts with USIC pertain to services in Colorado.

f.  Neptune Holding US Corp. (dba Altice USA) ("Neptune"). Neptune has its principal place of business in New York and is not incorporated in Colorado. Altice USA, Inc., is incorporated in Delaware and does not appear to have its principal place of business in Colorado. None of its relevant contracts with USIC pertain to services in Colorado. Further, the contract calls for consent to jurisdiction in New York.

g.  North Carolina Electric Membership Corporation, Inc. ("NCEMC"). NCEMC is incorporated in North Carolina and appears to have its principal place of business in North Carolina as well. None of its relevant contracts with USIC pertain to services in Colorado.

h.  Northland Cable Television, Inc. ("Northland"). Northland is incorporated in Washington and appears to have its principal place of business in New York. None of its relevant contracts with USIC pertain to services in Colorado.

i.  Oxford Networks. Oxford Networks is a Maine-based company, which appears to have been purchased by a New York-based hedge fund. None of its relevant contracts with USIC pertain to services in Colorado.

j.  RCN-BecoCom, Inc. (dba RCN) ("RCN-BecoCom"). RCN-BecoCom is incorporated in Massachusetts and appears to have its principal place of business in Massachusetts as well. None of its relevant contracts with USIC pertain to services in Colorado.

k.  RCN-Telecom Services, Inc. ("RCN-Telecom Services"). RCN-Telecom Services is incorporated in Pennsylvania and appears to have its principal place of business in Virginia. None of its relevant contracts with USIC pertain to services in Colorado.

l.  Suddenlink Communications ("Suddenlink"). Suddenlink Communications (Cequel Communications LLC) appears to have been acquired by Altice, which itself is discussed above. None of its relevant contracts with USIC pertain to services in Colorado.

m.  Vyve Broadband A, LLC. Vyve Broadband A is a Delaware limited liability company. As part of the Vyve portfolio, it appears to have been acquired by a Chicago-based hedge fund. None of its relevant contracts with USIC pertain to services in Colorado.

n.  Vyve Broadband Investments, LLC ("Vyve"). Vyve is a Delaware limited liability company, appears to have its principal place of business in Oklahoma, and appears to have been acquired by a Chicago-based hedge fund. None of its relevant contracts with USIC pertain to services in Colorado.

o.  ZenFi Networks, Inc. ("ZenFi"). ZenFi is a business serving New York and New Jersey. Although it was previously incorporated in New York, its registration is currently listed as "inactive" on the New York Department of State, Division of Corporation's website. None of its relevant contracts with USIC pertain to services in Colorado.

13.     The foregoing Customer contract information underscores the fact that requiring the joinder of shared Customers as parties to this lawsuit is not feasible. Each of the shared Customers are not subject to service of process in this state or would have valid objections to jurisdiction and venue in this Court.

14.     Many of the Customers listed above share Delaware citizenship with USIC and would destroy diversity of citizenship in this suit if joined.

### Utility Damages and Claims

15.     USIC is the leading provider of underground utility locating and damage prevention services in the United States, performing over 70 million "locates" annually.

16.     USIC, its Customers, and excavators all understand that excavation poses risks of damage to underground utility facilities, and USIC works together with its Customers and excavators to avoid such damage to the greatest extent possible.

17.     Damage to underground facilities can arise from any number of sources, which include but are not limited to failure to request locates before excavating, unlocatable facilities, errors in identifying and marking underground facilities, errors and omissions in the Customer's prints and maps relating to its underground facilities, acts or omissions by an excavator or other third party, and failures of communication or coordination between the various individuals or entities involved in a planned excavation.

18.     Given the extremely high volume of locate requests handled by USIC for its Customers each year and the risks related to excavation, USIC has been involved in a number of locate requests for excavation that ultimately resulted in an underground facility being damaged, whether or not due to any fault of USIC. These will hereafter be referred to as "Claims."

19.     When Claims arise, USIC works together with the Customer to identify the cause and extent of the damage. In certain instances, USIC agrees to reimburse the Customer for the cost to repair the damaged facility.

### PRG's Fraudulent Billing Practices

20.     USIC does not have a contractual relationship with PRG, nor is USIC a third-party beneficiary of any of PRG's contracts with any Customer.

21.     Some of USIC's Customers have hired PRG as a third-party administrator to help these Customers handle their Claims against USIC. As a third-party administrator, PRG processes invoices for each Customer and submits its own invoices for specific Claims to USIC for payment. These invoices contain PRG's summary and statement of the expenses incurred by the respective Customer in regard to a Claim.

22.     In every instance, PRG acts as an independent contractor of the Customers, is not employed by the Customers, and is not subject to their control or domination. PRG is akin to a debt collector in pursuing collection of any payments.

23.     PRG has submitted well over 6,000 Claims to USIC over the last few years, involving over $14 million in claimed damages.

24.     Given the volume of Claims USIC receives each year for damages stemming from over 70 million locates annually and the established relationship it has with its Customers—locate contracts often last several years—USIC has generally paid the invoices submitted by PRG in reasonable reliance that PRG is charging USIC in a manner consistent with the actual amounts of money expended to repair the damaged facility for each Claim.

25.     USIC's reliance on PRG's charges is reasonable because PRG holds itself out as a third-party administrator working on behalf of a particular Customer, seeking to collect from USIC the money actually expended by the Customer for a particular Claim.

26.     Rather than invoice USIC according to the actual costs expended by the Customer for each Claim, however, USIC has learned that PRG systematically has been inflating the charges included on the invoices in an effort to deceive USIC into paying higher amounts.

27.     In many instances, the amount that PRG charges to USIC in its invoice greatly exceeds the amount charged by the party who contracted with the Customer to repair the facility damage for a given Claim ("Contractor's invoice"). PRG attempts to disguise its inflation and manipulation of the charges by withholding full information or providing misinformation about the Claims.

28.     In addition to misrepresenting the Customer's actual costs, PRG sometimes includes line items explicitly relating to fees for PRG's own services provided in connection with submitting invoices. As a matter of practice, however, USIC refuses to pay such fees when the invoice plainly identifies them as expenses or fees of PRG rather than of the Customer. Therefore, such fees are not at issue in this Complaint, nor is the question whether PRG is contractually entitled to collect such a fee from USIC. It is not something USIC seeks to recover in this lawsuit.

29.     What is at issue is PRG's false representations of the amounts expended by the Customer, which USIC has paid in reliance on PRG's representations. Regardless of the purported reason for doing so, PRG is not entitled to make material misrepresentations of fact regarding the amounts expended by the Customer on a Claim.

30.     PRG has utilized a variety of different approaches in falsifying its charges to USIC. By way of example only, PRG has submitted invoices to USIC that misrepresent the number or types of trucks and/or technicians the Contractor utilized in repairing the facility damage on a Claim, the amount of time such trucks or technicians were utilized by the Contractor, and/or the rates the Contractor charged or the Customer expended for the materials utilized in repairing the facility damage.

31.     As an example of this tactic, on March 4, 2021, PRG sent USIC invoice #CC-90090, which included billings for four "Maintenance Tech III" technicians from the Customer, at a cost of $112.97 each, and four "Maintenance Bucket Truck Rolls" (meaning usage of four trucks to send technicians to the site) at a cost of $120 each. PRG's damage investigation findings state that "Comcast technicians responded to the outage and repaired the damaged cable." But USIC obtained photographic proof that the Customer only sent one technician to repair the damaged line.

This invoice provides a perfect illustration of the practice employed by PRG on many other invoices, including many of which USIC is not yet aware.

32.    Similarly, on May 23, 2019, in invoice #CC-62925, PRG charged USIC for five truck rolls when only one technician was used by the Customer to repair the damage. The four phantom truck rolls—which were not utilized by the Customer—represent about 25% of the overall invoice amount.

33.    On July 2, 2019, PRG sent USIC invoice #CC-64400 charging for 14 truck rolls and 14 hours of labor for a temporary repair, when in fact no more than two trucks were used by the Customer for this repair. Here, the phantom truck rolls represented over 30% of the invoice amount.

34.    On June 25, 2019, PRG sent USIC invoice #CC-63456, charging USIC for two truck rolls and two hours of technician time, yet only one technician was used.

35.    On July 31, 2019, PRG sent USIC invoice #CC-66025 charging for six truck rolls when only two technicians were on site.

36.    On April 22, 2020, PRG employee Craig Lewis submitted invoice #DK-437092 to USIC employees Tiffany Ellis and Anthony Mitchell. A comparison between the invoice submitted by PRG and the Contractor's invoice revealed that the alleged cost of materials on PRG's invoice was $1580.67 but the actual cost of materials on the Contractor's invoice was $1346.59, an increase of over 17%. PRG intended that USIC would not notice this discrepancy and instead rely on PRG's representations concerning the amount owed, which USIC has historically done on the bulk of PRG's invoices. PRG does not routinely provide the Contractor's invoice to USIC.

37.     Another false billing practice frequently utilized by PRG involves billing USIC based on estimates of work to be performed rather than the Customer's actual expenses. Yet such invoices are not presented to USIC as "estimates" but rather representations of the Customer's expenses. USIC does not have independent knowledge sufficient to verify when PRG is billing USIC based on an "estimate" rather than actual expenses. When USIC pays the invoice based on PRG's undisclosed estimate, PRG does not later correct the amount and refund USIC any overpayment.

38.     As an example of this tactic, on July 10, 2020, PRG sent USIC invoice #MC-80685, on which PRG represented that the Customer had required a directional bore to repair 573 feet of cable at a cost of over $5,000 just for the boring. That, however, was false and inflated because the actual length of cable replaced by the Customer was 376 feet. PRG's invoice contained other inflated line items that contradicted the Customer's actual costs.

39.     In other instances, PRG adds certain line items to invoices such as "emergency call out" charges or other fees that are not reflected in the Contractor's invoice or the Customer's actual costs, yet PRG falsely represents these fees as having been part of the Customer's actual costs.

40.     Additionally, on information and belief, PRG uses an internal "cheat sheet" system that adds a certain percentage inflation on its invoices to USIC, based on the Customer represented and the amount of the Claim, regardless of the actual work performed in connection with the Claim. It utilizes these methods in an effort to charge higher rates for work than what was incurred by the Customer, or to collect amounts for work that was not actually performed.

41.     As demonstrated by the specific examples referenced above, PRG has engaged in a pattern and practice of fraudulent, misleading, and wrongful conduct by way of its overinflated and false billing practices.

42.     Given the multitude of different approaches that PRG has employed, including but not limited to the specific examples described above, and the volume of Claims being processed, USIC has been unable, by reasonable diligence, to discover facts necessary to determine the full extent and scope of PRG's false billing practices, including whether these practices extend to each of the shared Customers or only a subset. Such information lies uniquely within PRG's own knowledge.

43.     USIC does not have sufficient resources or access to information to be able to independently assess the Customer's costs on each Claim. Instead, USIC relies on the information provided by PRG and historically pays the invoices based on PRG's representations.

44.     To the extent USIC has been able to investigate and uncover some of PRG's false billing practices, the investigation shows that PRG has utilized the same tactics with respect to many more invoices that USIC paid without realizing they had been falsified. On information and belief, PRG has utilized this pattern and practice of false billing on all or a majority of its invoices to USIC. Nevertheless, USIC lacks sufficient information at this time to know whether PRG's pattern and practice extends to each of the shared Customers.

45.     PRG has deceived and misled USIC into paying much higher damage amounts on Claims than the actual costs. Additionally, PRG's deceptive business practices have caused USIC to expend significant time, money, and resources to investigate the nature of the Claims and the actual amounts expended on a given Claim, even on those PRG ultimately admitted were false.

46.     PRG utilized deceptive practices and fraudulent concealment of the nature of its upcharges to prevent USIC from learning about them sooner by, among other things, selectively increasing certain line-item costs that were difficult to validate, using inflated estimates rather than actual invoices, and adding new line-item charges that did not reflect the actual costs to the Customer but that were attributed to the Customer on the invoice.

47.     USIC is not aware of the identity of the particular PRG employee(s) who prepared and submitted each invoice to USIC, as that information is uniquely in PRG's knowledge.

### Scope of Legal Claims

48.     For purposes of this lawsuit, USIC is not challenging the types of costs or damages that USIC's Customers may be entitled to recover under their respective contracts with USIC. Rather, USIC seeks recompense for the amounts falsely charged by PRG above what the Customers expended in connection with each Claim.

49.     By falsely and fraudulently misrepresenting the amounts actually spent by the Customers, PRG has acted outside the Customers' delegation of authority to collect money from USIC. The fruits of these false and fraudulent billing practices inure to the benefit of PRG alone, and a judgment in USIC's favor would not affect any Customer's right to recover amounts actually expended in connection with a Claim. Therefore, complete relief on USIC's causes of action can and will be accorded among the existing parties to this action.

50.     It is axiomatic that none of USIC's contracts with its Customers could legally allow any party or non-party (including PRG) to fraudulently or falsely misrepresent an amount claimed to be expended by the Customer. Such an arrangement would violate the implied covenant of good faith and fair dealing. Critically, too, USIC does not seek relief in this Complaint for amounts

actually incurred by any Customer, and thus the Customers' individual contract rights will not change based on the causes of action in this Complaint.

51.     With respect to the causes of action in this Complaint, USIC does not allege, and does not believe, that the Customers either authorized or ratified PRG's false billing practices. Rather, USIC asserts that PRG exceeded the bounds of its authority to submit invoices to USIC and thereby committed tortious acts punishable separately and completely independently from any adjudication of the Customers' rights under the contracts.

52.     Any disputes that USIC may have from time to time with any Customer concerning the amount that Customer is entitled to recover under its contract for repair costs, if any, could be raised in a separate lawsuit seeking to recover that separate portion of any invoice, or to declare such amounts unrecoverable under the relevant contract. USIC does not hold PRG responsible for any amounts expended by the Customer that are not compensable under a governing contract. USIC's causes of action here do not seek to challenge any Customer's entitlement to amounts actually expended under the terms of a contract for repairs of a damaged facility but, rather, seek to hold PRG responsible for amounts falsely represented by PRG as having been expended by the Customer in order to inflate the amount of money PRG receives from USIC.

53.     More than a year prior to filing this lawsuit, USIC had sued Comcast Cable Communications Management, LLC ("Comcast") in the United States District Court for the Eastern District of Pennsylvania, Case No. 2:20-cv-2880. That lawsuit concerned a separate and distinct dispute over Comcast's contractual right to recover certain types of expenses in connection with a damaged facility, rather than any false or fraudulent billing practices. PRG was not a party to that suit. USIC settled its lawsuit against Comcast, and the suit was dismissed with prejudice on

March 8, 2021. USIC's settlement did not release any of its claims against PRG, as the two suits are unrelated and involve entirely different legal and factual issues. USIC's continued pursuit of its claims in this lawsuit following settlement of the Comcast lawsuit further demonstrates that this lawsuit does not concern interpretation of its contracts with its Customers.

54.     Because USIC does not assert that any Customer engaged in wrongdoing with respect to the conduct alleged in this Complaint, and because USIC's business model depends on a continuing and fruitful relationship with its Customers, it would be unjust and destructive to USIC's business relationships to require USIC to file claims against the Customers based on wrongdoing committed by PRG.

55.     This civil action does not prevent the Customers from protecting their interests in this litigation, including by seeking voluntary intervention, nor does it subject any Customer to multiple or inconsistent obligations. This Court, moreover, is not precluded from affording USIC complete relief in its claims against PRG in the absence of the Customers. If USIC prevails in this action, USIC can recover only from PRG, which would not subject the Customers to liability.

56.     Furthermore, because of the geographical diversity of USIC's Customers and USIC's services provided to those Customers, and in light of the jurisdictional restrictions imposed by the Constitutions of the United States and the State of Colorado and USIC's agreements with the various Customers, as explained above and in Exhibit 1, it would not be feasible to join the Customers to this lawsuit, even if USIC had asserted causes of action against them.

57.     Even if some of the Customers were alleged to have participated in the tortious misrepresentations along with PRG, which USIC does not assert, neither Colorado law nor federal law requires all alleged joint tortfeasors to be joined in the same lawsuit.

58.     The amount USIC has paid PRG pursuant to invoices that PRG has processed on behalf of Customers is substantial. For example, between 2018 and September 6, 2020, USIC has paid PRG approximately $13,658,000.00 for invoices generated by PRG on behalf of Customers.

59.     Because USIC has ongoing-multi-year contracts with most of its Customers and no control over whether those Customers use PRG as a third-party administrator for Claims, the damage to USIC will continue to grow each year unless PRG is enjoined from utilizing its deceptive, fraudulent, and unfair business practices.

**COUNT I – FALSE REPRESENTATION / FRAUDULENT MISREPRESENTATION**

60.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

61.     PRG does not owe any contractual duties to USIC.

62.     PRG has a duty, independent of any contractual relationship it has with a Customer or other third party, not to supply false information to others, including USIC, for guidance in a transaction involving a pecuniary interest.

63.     As detailed above, in falsified invoices, PRG made knowingly false representations to USIC regarding the actual costs to repair the facility damage for the Claims reflected on the invoices.

64.     PRG also has knowingly omitted material information from its invoices to USIC, including but not limited to the fact that certain invoices represented estimates rather than actual expenses of the Customer.

65.     These representations and omissions were material, and USIC relied upon them when paying the falsified invoices.

66.     PRG knew that the invoices were false and misleading when they were submitted to USIC and/or was aware that USIC did not know whether the representation was true or false.

67.     PRG intended that USIC rely on the false representations when paying the invoices and/or intended to create a false impression of the actual facts in the mind of USIC with the intent that USIC take a course of action it might not have taken if it knew the actual facts.

68.     USIC was ignorant as to the falsity of the representations in the invoices and relied on the invoices and false representations and took action on the assumption that the facts were different than what they actually were.

69.     USIC was reasonable and justified in its reliance that the invoices generated by PRG on behalf of Customers with whom USIC had long-term relationships would be accurate.

70.     USIC was damaged by its reliance on the false and misleading invoices, as it paid money and expended additional time and employee resources based on the misrepresentations therein in amounts to be determined at trial.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count I against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to the monies taken through the false billing. On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

## COUNT II – NEGLIGENT MISREPRESENTATION

71.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

72.     PRG does not owe any contractual duties to USIC.

73.     PRG has a duty, independent of any contractual relationship it has with a Customer or other third party, not to supply false information to others, including USIC, for guidance in a transaction involving a pecuniary interest.

74.     As detailed above, in falsified invoices, PRG gave false information to USIC regarding the actual costs to repair the facility damage for the Claims reflected on the invoices.

75.     PRG gave such false information through the course of its business related to transactions and for resolving the Claims in which USIC had a financial interest.

76.     PRG gave the false information to USIC for the guidance and/or use of USIC in a business transaction.

77.     PRG gave the false information to USIC without exercising reasonable care or competence to obtain and communicate the true information to USIC regarding the actual costs to repair the facility damage for the Claims reflected on the invoices, and PRG was thus negligent in obtaining or communicating the information to USIC.

78.     These false representations were material, and USIC relied upon them when paying the falsified invoices.

79.     PRG gave the information with the intent or knowing that USIC would act in reliance on PRG's false information when paying the invoices.

80.     USIC did, in fact, rely on PRG's false information to its detriment.

81.     USIC was justified in its reasonable reliance that the false invoices generated by PRG on behalf of Customers with whom USIC had long-term relationships would be accurate.

82.     USIC was damaged by its reliance on the false and misleading invoices, as it paid money and expended additional time and employee resources based on the misrepresentations therein in amounts to be determined at trial.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count II against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to the monies taken through the false billing. On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

## COUNT III – CONVERSION

83.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

84.     PRG has a duty, independent of any contractual relationship it has with a Customer or other third party, not to supply false information to others, including USIC, for guidance in a transaction involving a pecuniary interest.

85.     USIC owned, possessed, and had a right to possess certain monies related to its business operations.

86.     PRG intentionally and substantially interfered with USIC's ownership, possession, and right to possession of its monies when PRG obtained and took possession of the monies legally owned by USIC through generating invoices that were knowingly false and misleading. The invoices inflated the actual cost to repair the facility damage for the Claims reflected on the invoices. PRG knew it did not have the right to the monies taken from USIC at the time of the false and misleading billings. PRG took the monies with the intent to permanently deprive USIC

of the monies. By taking the monies from USIC, PRG deprived USIC of the right to the monies rightfully belonging to USIC and caused USIC to incur unnecessary time and expenses.

87.     USIC did not consent to PRG's interference.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count III against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to the monies taken through the false billing. On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

## COUNT IV – CIVIL THEFT

88.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

89.     PRG has a duty, independent of any contractual relationship it has with a Customer or other third party, not to supply false information to others, including USIC, for guidance in a transaction involving a pecuniary interest.

90.     USIC owned, possessed, and had a right to ownership in certain monies related to its business operations.

91.     PRG intentionally, knowingly, and by deception obtained control and possession of monies legally owned by USIC without authorization through generating invoices that were false and misleading. The invoices inflated the actual cost to repair the facility damage for the Claims reflected on the invoices.

92.     PRG knew it did not have the right to the monies taken from USIC at the time of the false and misleading billings, and PRG knowingly took the monies with the intent to, or in such a manner as to, permanently deprive USIC of the monies.

93.     By taking the monies from USIC, PRG deprived USIC of the right to the monies rightfully belonging to USIC.

94.     Pursuant to Colo. Rev. Stat. § 18-4-405 (or, in the alternative, Ind. Code § 35-43-5-3(a)(2)), USIC is entitled to three times its damages, including but not limited to three times the monies USIC paid PRG through the false billing, plus costs and attorney's fees.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count IV against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to three times the monies USIC paid PRG through the false billing in accordance with Colo. Rev. Stat. § 18-4-405 or, in the alternative, Ind. Code § 35-43-5-3(a)(2). On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

## COUNT V – VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT, Colo. Rev. Stat. §§ 6-1-101, *et seq.*

95.     USIC incorporates herein by reference, as if fully stated herein, the contents of all preceding and succeeding paragraphs.

96.     PRG engaged in deceptive trade practices in violation of Colo. Rev. Stat. § 6-1-105.

97.     The deceptive trade practice occurred in the course of its business when, in falsified invoices, PRG knowingly or recklessly made false or misleading statements of fact from its

Colorado offices to USIC regarding the actual costs to repair the facility damage for the Claims reflected on the invoices.

98.     USIC has been injured as a result of PRG's deceptive trade practices in the course of USIC's business and on behalf of Customers with whom USIC has a business relationship.

99.     USIC has suffered actual damages and losses as a result of PRG's deceptive trade practices in that USIC would not have paid the total amounts purportedly owed in the falsified invoices absent PRG's false or misleading statements therein, and USIC has expended additional time and employee resources to investigate PRG's invoices and negotiate with PRG regarding proper payment amounts.

100.     PRG's deceptive trade practices significantly impact the public as actual or potential consumers of PRG's services because PRG is a nationwide organization that recoups millions of dollars of utility property damage repair costs each year for its customers and, as a result, PRG's deceptive trade practices have a significant potential to affect the general public because its fraudulent conduct impacts the cost to perform a statutorily required duty of utilities intended to protect the public's utility infrastructure and general safety. As a result, utilities, all of which must have their facilities located, will incur additional locate expenses that ultimately will affect the cost that the public pays for all manner of essential utilities, including gas, electric, telephone, communications, sewer, and water. Furthermore, the excavation and damage prevention industry is a wide industry with thousands of participants whom PRG targets with its cost recovery services.

101.     In this way, it is not the nature of PRG's business alone but its specific deceptive practices that detrimentally affect the public. PRG's conduct also directly and adversely impacts

the integrity of the 811 damage prevention system that is designed to protect the public from risks of excavation.

102.     The damage that USIC has suffered is not unique to USIC's relationship with PRG but is a feature of PRG's general pattern and practice of false billing. In fact, USIC has been contacted by at least one other business in the utility maintenance and construction industry complaining specifically about PRG's fraudulent billing practices. It is extremely likely that other businesses have suffered and will suffer similar injuries through PRG's deceptive practices, which will further increase the cost of utilities to the public.

103.     PRG's acts and representations constitute bad faith conduct within the meaning of Colo. Rev. Stat. Ann. § 6-1-113, as it was fraudulent, willful, knowing, and/or intentional conduct that caused injury to USIC.

104.     Pursuant to Colo. Rev. Stat. § 6-1-113, USIC is entitled to recover an amount equal to three times its actual damages, including but not limited to three times the monies USIC paid PRG through the false billing, and reasonable attorney's fees and costs.

WHEREFORE, USIC prays that this Court enter judgment in its favor on Count V against PRG and that the Court award USIC damages to compensate for its losses, including but not limited to three times the monies USIC paid PRG through the inflated billing in accordance with Colo. Rev. Stat. § 6-1-113. On all amounts awarded, USIC seeks pre- and post-judgment interest, costs incurred pursuing recovery, attorney's fees, and such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, USIC hereby requests a jury trial on all issues so triable.

Dated this 15th day of October 2021.

/s/ Brent R. Owen

Peter S. Gould (Atty. Reg. #: 34089)
Brent R. Owen (Atty. Reg. #: 45068)
SQUIRE PATTON BOGGS (US) LLP
1801 California Street, Suite 4900
Denver, CO 80202
(303) 830-1776
(303) 894-9239 fax
peter.gould@squirepb.com
brent.owen@squirepb.com

David B. Helms (*admission pending*)
GM Law PC
8000 Maryland Avenue, Suite 1060
St. Louis, MO 63105
(314) 474-1750
(816) 471-2221 fax
davidh@gmlawpc.com

Benjamin D. Mooneyham (*admission pending*)
GM Law PC
1201 Walnut St., Suite 2000
Kansas City, MO 64106
benm@gmlawpc.com
(816) 471-7700
(816) 471-2221 fax

*Attorneys for Plaintiff*
*USIC Locating Services, LLC*