IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-02785-PAB-CYC

USIC LOCATING SERVICES, LLC,

     Plaintiff,

v.

PROJECT RESOURCES GROUP, INC.,

     Defendant.

_____

**ORDER**
_____

     The matters before the Court are the Motion to Transfer Venue [Docket No. 84] and the Renewed Motion to Dismiss [Docket No. 86].  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I.    **BACKGROUND**

    A.   **Factual Background**[1]

     States throughout the country have established "One Call" notification centers, such as Colorado 811, to facilitate safe excavation around utility lines.  Docket No. 1 at 2, ¶ 6.  Public utility companies have a legal obligation to locate and mark the approximate location of their underground utility lines when they receive requests through a state's One Call notification center.  *Id.*, ¶ 7.  Plaintiff USIC Locating Services, LLC ("USIC") contracts with public utility companies across the country to locate and

_____

[1] The following facts are taken from the complaint, Docket No. 1, and are presumed true for the purpose of ruling on the motion to dismiss.  The Court does not accept these allegations as true for ruling on the motion to transfer venue.

mark the utility company's utility lines in response to One Call requests.  *Id.*, ¶ 8.  USIC performs over 70 million "locates" annually.  *Id.* at 9, ¶ 15.  Such "locates" have resulted in damage to utility companies' underground facilities.  *Id.* at 10, ¶ 18.  These incidents result in claims against USIC.  *Id.*  When claims arise, USIC works with the utility company to identify the cause and extent of the damages and, under certain circumstances, USIC will reimburse the utility company for the cost of repairing the damage.  *Id.*, ¶ 19.

Some of USIC's customers have hired defendant Project Resources Group, Inc. ("PRG") as a third-party administrator to help handle the utility company's claims against USIC.  *Id.*, ¶ 21.  When a utility company hires PRG, PRG acts as an independent contractor of the utility company; it is not employed by the company or subject to the company's control.  *Id.* at 11, ¶ 22.  USIC and PRG do not have a contractual relationship.  *Id.* at 10, ¶ 20.

Over the last few years, PRG has submitted over 6,000 claims to USIC for claimed damages of over $14 million.  *Id.* at 11, ¶ 23.  USIC has generally paid the invoices submitted by PRG and has relied on the fact that PRG is charging USIC in a manner consistent with the actual amount of money expended to repair the damaged facility.  *Id.*, ¶ 24.  However, PRG has systematically inflated the charges included on invoices submitted to USIC.  *Id.*, ¶ 26.  In many instances, the amount that PRG charges to USIC in its invoice exceeds the amount charged by the party that contracted with the utility company to repair the damaged facility.  *Id.,* ¶ 27.

PRG has used different approaches to falsify its charges to USIC, including submitting invoices that misrepresent (1) the number or types of technicians or trucks

the repair contractor used to repair the facility damage, (2) the amount of time the repair

contractor utilized the trucks or technicians, or (3) the rates the repair contractor

charged or the utility company expended for the materials used to repair the facility

damage. *Id.* at 12, ¶ 30. For example, on March 4, 2021, PRG sent USIC an invoice

that included bills for four repair technicians and four maintenance trucks, but USIC

obtained proof that the utility company sent one technician to repair the damage. *Id.* at

12–13, ¶ 31. PRG sent USIC invoices with similar misrepresentations on May 23, 2019,

June 25, 2019, July 2, 2019, July 31, 2019, and April 22, 2020. *Id.* at 13, ¶¶ 32–36.

PRG has a practice of billing USIC using the repair estimates provided to the

utility company, rather than billing based on the actual cost to repair the damage to the

facility. *Id.* at 14, ¶ 37. PRG does not later correct the amount and refund USIC for any

overpayment. *Id.* For example, on July 10, 2020, PRG sent USIC an invoice that

represented that the utility company was required to repair 573 feet of cable at a cost of

over $5,000. *Id.*, ¶ 38. However, the actual length of cable replaced by the utility

company was 376 feet. *Id.* PRG includes line items in invoices, such as "emergency

call out" fees, that are not reflected in the repair contractor's invoice or the utility

company's actual costs. *Id.*, ¶ 39. Moreover, PRG uses an internal "cheat sheet" that

inflates invoices to USIC by a certain percentage based on which utility company has

the claim against USIC and the amount of the claim. *Id.*, ¶ 40. PRG has used these

false billing practices on all or a majority of its invoices to USIC. *Id.* at 15, ¶ 44.

### B.  Procedural Background

On October 15, 2021, USIC filed suit in this case. *Id.* at 1. The complaint brings

five claims against PRG: fraudulent misrepresentation, negligent misrepresentation, a

conversion, civil theft, and violations of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101, et seq.  *Id.* at 19–26, ¶¶ 60–104.

On January 10, 2022, PRG filed its first motion to dismiss USIC's claims.  Docket No. 15.  In the motion, PRG explained that USIC had previously filed its claims in the District Court for Arapahoe County, Colorado.  *Id.* at 2.  PRG argued that the proceedings in that case required dismissal of USIC's claims.  *See id.*  In ruling on a motion to dismiss filed by PRG in the state court case, the Arapahoe County court determined that USIC failed to join indispensable parties, namely, the utility companies with whom USIC had contracted.  *Id.*  USIC did not join these parties in the Arapahoe County court case, *id.*, but rather filed the present action in federal court, bringing substantially similar claims.  *Id.*  USIC then filed a notice of voluntary dismissal without prejudice in the state court case.  *Id.*  The Arapahoe County court deemed USIC's voluntary dismissal to be a dismissal with prejudice.  *Id.*  In PRG's first motion to dismiss filed in this case, PRG argued that USIC's claims are barred by the doctrine of claim preclusion due to the dismissal with prejudice.  *Id.* at 6–9.

While the motion to dismiss was pending, the parties filed a stipulated motion to stay the proceedings in this case, indicating that USIC had appealed the Arapahoe County court's order deeming the dismissal of the state court action to be with prejudice.  Docket No. 30.  The Court granted the stay pending resolution of USIC's appeal.  Docket No. 33.  On February 21, 2024, the parties filed a status report indicating that the Colorado Court of Appeals vacated the district court's order holding USIC's dismissal to be with prejudice.  Docket No. 47.  On February 22, 2024, the Court reopened this case.  Docket No. 48.

On January 13, 2025, PRG filed a renewed motion to dismiss USIC's claims. Docket No. 86. PRG filed a motion to transfer venue that same day. Docket No. 84. On February 6, 2025, USIC responded to both motions. Docket Nos. 95, 96. PRG replied. Docket Nos. 102, 103.

## II.    MOTION TO DISMISS

PRG argues that the Court should dismiss USIC's claims for three reasons. Docket No. 86 at 1–3. First, PRG moves under Federal Rule of Civil Procedure 12(b)(7) to dismiss USIC's claims for failing to join an indispensable party. *Id.* at 10–16. Second, PRG argues that USIC's claims for negligent misrepresentation and conversion should be dismissed under the economic loss rule. *Id.* at 16. Third, PRG asserts that USIC has failed to plausibly state a CCPA claim. *Id.* at 18–19.

### A.    Rule 12(b)(7) and Rule 19

Federal Rule of Civil Procedure 12(b)(7) states that a party may move to dismiss a case based on a "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). To succeed on a motion under Rule 12(b)(7), the moving party must show that "(1) the [absent] party is a required person under Rule 19(a), (2) joinder of the party is infeasible, and (3) dismissal is appropriate." *Lebsock 7, LLLP v. Bank of Colo.*, No. 22-cv-02589-RMR-NRN, 2023 WL 6216621, at *3 (D. Colo. Sept. 25, 2023) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Intrawest ULC*, No. 13-cv-00079-PAB-KMT, 2014 WL 1016072, at *2 (D. Colo. Mar. 14, 2014)).

To determine whether a party is indispensable under Rule 19(a), courts consider the following factors: "(1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit

would be subjected to a substantial risk of multiple or inconsistent obligations." *USA v. Lippard*, No. 23-cv-1078-MDB, 2024 WL 3252207, at *2 (D. Colo. May 20, 2024) (citing *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996)); Fed. R. Civ. P. 19(a)(1). If a party meeting the requirements of Rule 19(a) cannot be feasibly joined to the case, "the court must decide under Rule 19(b) whether the party is 'indispensable' such that 'the action cannot "in equity" and "good conscience" proceed in that person's absence.'" *Lebsock*, 2023 WL 6216621, at *3 (quoting *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278–79 (10th Cir. 2012) (quoting Fed. R. Civ. P. 19(b))). In determining whether a case can proceed in the absence of a required party, courts consider (1) the extent to which a judgment rendered without the required party might prejudice that party or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered without the required party would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *Lippard*, 2024 WL 3252207, at *2 (citing Fed. R. Civ. P. 19(b)(1)–(4)).[2]

---

[2] The parties dispute whether the Court should use a burden-shifting framework when analyzing PRG's Rule 12(b)(7) motion. Docket No. 86 at 10 ("Rule 19 motions follow a burden-shifting approach. A movant must make a *prima facie* showing that a non-party is required." (citing *Boles v. Greenville Hous. Auth.*, 468 F.2d 476, 478 (6th Cir. 1972); 7 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1609 (3d ed.)); Docket No. 95 at 4 n.2 ("PRG cites a decades-old, out-of-circuit case to argue that this Court should apply a 'burden-shifting approach,' but such an approach has not been adopted in the Tenth Circuit, as indicated by the cases cited above." (internal citation omitted)). Although PRG argues that the "burden shifting detailed in *Boles* is expressly adopted in Wright & Miller," Docket No. 103 at 5; *see also Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001) (citing 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1604 (2d ed.1986)), the Court agrees that PRG provides no Tenth Circuit case adopting a burden shifting approach. Regardless, for the reasons discussed below, the Court finds that PRG has

PRG argues that USIC's and PRG's shared customers, i.e. the utility companies that hired PRG to file claims with USIC, are required parties to this action. Docket No. 86 at 11. PRG maintains that a "contracting party is the paradigm of an indispensable party." *Id.* at 12 (quoting *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991)). It asserts that, for each of USIC's claims against PRG, the Court will be required to interpret USIC's contracts with the utility companies to determine whether PRG received money on behalf of the utility company to which the company was not entitled. *Id.* at 11. PRG argues that the utility companies are therefore required parties because the Court may interpret these contracts in a manner inconsistent with the utility companies' interests. *Id.* at 13. Moreover, PRG claims that the utility companies are required parties because an adverse judgment on USIC's claims may expose PRG to inconsistent obligations between the duties it owes USIC and the utility companies. *Id.*

USIC responds that a contracting party is only indispensable when the claims at issue are either "contract-based claims or necessarily require[ ] a determination of the rights of non-parties." Docket No. 95 at 8 (citing *Travelers Indem.*, 775 F. Supp. at 527). USIC maintains that, because its claims are based on misrepresentations made by PRG that led to USIC overpaying for repairs, USIC is seeking to recover damages caused only by PRG and the return of funds to which the utility companies were never entitled. *Id.* at 9. Therefore, USIC asserts that its claims do not concern the utility companies' contractual rights or impair their interests. *Id.* Moreover, USIC contends

---

not made a prima facie showing that USIC has failed to join a required party under Rule 19(a).

that, regardless of the outcome in this case, the utility companies will be unaffected. *Id.* at 11. If USIC succeeds on its claims, USIC asserts that it will have shown that PRG acted outside its scope of authority by lying to USIC and that the utility companies would therefore have no liability. *Id.* However, if PRG wins, PRG will have demonstrated that USIC is not entitled to any money from PRG or the utility companies. *Id.* USIC argues that, under either outcome, "any judgment to USIC can be resolved solely between USIC and PRG without affecting the customers' pecuniary interests." *Id.*

Considering the factors identified in Rule 19(a), the Court agrees that the utility companies are not required parties.

### 1. Complete Relief is Available to the Parties

The Court can accord complete relief among the parties in this case. For each of its claims, USIC seeks to recover "damages to compensate for its losses, including but not limited to the monies taken through the false billing." Docket No. 1 at 20, 22–24, 26. As such, USIC is seeking to recover monetary damages that can be entirely satisfied by PRG. *See Hernandez v. Chevron U.S.A., Inc.*, 347 F. Supp. 3d 921, 962 (D.N.M. 2018) (considering "whether the district court could grant the plaintiff all the relief that it was seeking on its claims" (citing *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081 (10th Cir. 2003)); *Errico v. Stryker Corp.*, 2010 WL 5174361, at *2 (S.D.N.Y. Dec. 14, 2010) ("A claim for money damages alone, however, permits the Court to grant complete relief among the parties because it does not require the absent party to do anything."). Therefore, PRG has failed to show that the utility companies are required parties under Rule 19(a)(1)(A).[3] *See* Fed. R. Civ. P. 19(a)(1)(A) (a person "must be

---

[3] Although USIC does not ask for injunctive relief in its claims, Docket No. 1 at 19–26, ¶¶ 60–104, the complaint states that "the damage to USIC will continue to grow

joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties").

### 2. *The Utility Companies Do Not Have a Sufficient Interest in This Case*

The Court finds the utility companies do not have a sufficient interest related to USIC's claims that would be impaired if this case were to proceed without them. The utility companies may have four interests affected by this litigation. First, because this case involves payments that USIC makes to PRG to reimburse the utility companies for excavation damage, the utilities may perceive a pecuniary interest in this case. Second, PRG suggests that the utilities could have an interest in the interpretation of their contracts with USIC. *See* Docket No. 86 at 11. Third, the utility companies may invoke provisions of their contracts with USIC that require USIC to follow a procedure for claim resolution before filing a lawsuit, which USIC does not allege it has complied with. Fourth, the utilities might invoke the provision of their contracts that require claims or controversies arising out of or relating to the agreements to be brought in certain jurisdictions. Docket No. 84 at 5. However, these interests do not support a finding that the utility companies are required parties under Rule 19(a)(1)(B)(i). *See* Fed. R. Civ. P. 19(a)(1)(B)(i) (a person "must be joined as a party if: . . . (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest").

---

each year unless PRG is enjoined from utilizing its deceptive, fraudulent, and unfair business practices." *Id.* at 19, ¶ 59. However, even if the Court were to enjoin PRG, PRG makes no argument that such an injunction would require any action by the utility companies. Therefore, complete relief can be granted to USIC regardless of whether it seeks an injunction.

As to the utility companies' possible pecuniary interest, USIC alleges that it has

already paid PRG for the utility companies' claims. *See* Docket No. 1 at 11, ¶ 24. USIC

is not seeking to recover any money from the utility companies. Instead, USIC alleges

that the "fruits of [PRG's] false and fraudulent billing practices inure to the benefit of

PRG alone." *Id.* at 16, ¶ 49. "In ruling on a Rule 12(b)(7) motion to dismiss, courts

accept as true the allegations set forth in a complaint." *O'Neill v. Open Water

Adventures Inc.*, 2021 WL 2652950, at *4 (W.D.N.C. June 28, 2021); *16th & K Hotel, LP

v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12 (D.D.C. 2011) ("In evaluating

the need for the absent person under Rule 12(b)(7), the court must accept as true the

allegations in the complaint, and may also consider extrinsic evidence submitted by the

parties." (citing *Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 479 n.2, 480 n.4 (7th

Cir. 2001)); *Celec v. Edinboro Univ.*, 132 F. Supp. 3d 651, 673 (W.D. Pa. 2015).

Although the Court "may also consider evidence outside the pleadings when making a

Rule 19 determination," *Celec*, 132 F. Supp. 3d at 673, PRG has produced no evidence

that the utility companies, rather than PRG, received the money that USIC allegedly

overpaid for repairs. Therefore, the Court accepts as true USIC's allegation that PRG

alone profited from the alleged fraud. Accordingly, the utility companies' pecuniary

interests will not be affected by the resolution of USIC's claims because the companies

have not received any overpayments by USIC.

However, even if the Court were to assume that PRG passed on all of the claim

proceeds to the utility companies, the utility companies would still not have a pecuniary

interest in the outcome of this case. "[I]f the absent party would have no recourse to

protect the claimed interest even absent the litigation, the outcome of the action may

have no practical effect on that party's ability to protect their interest." *Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1034 (D. Minn. 2016) (citing *CSX Transp., Inc. v. Forst*, 777 F. Supp. 435, 443–45 (E.D. Va. 1991)). If USIC prevails in this case, USIC will have demonstrated that it overpaid PRG for the claims. PRG provides no support for the proposition that the utility companies would nevertheless be entitled to the money USIC overpaid on repairs. Because the utility companies would have no entitlement to this money, they would have "no recourse to protect the claimed interest." *Id*. As such, the outcome of this action will have no practical effect on the utility companies' ability to protect their interest in the claim payments.

Next, the utility companies' alleged interest in how the Court interprets their contracts with USIC is insufficient to make them required parties. First, PRG has failed to demonstrate how such an interest is relevant to USIC's claims. PRG asserts that, because USIC's claims seek to recover the money it overpaid for repairs, the Court or a jury will necessarily be required to determine what the proper amount USIC should have paid for such repairs. *See* Docket No. 86 at 11. It maintains that the proper amount for these repairs is determined by the contracts between USIC and the utility companies. *Id*. As such, PRG argues that the Court will have to interpret the contracts between USIC and utility companies. *Id*. at 12. However, PRG's argument may, at most, pertain to unconverted contractual provisions as opposed to provisions that could adversely affect the utility companies' interest. Nothing in the complaint suggests that there is an underlying dispute as to the amount of repair costs the utility companies are entitled to under the contracts. *See* Docket No. 1. Rather, USIC's claims are based on the allegation that, due to PRG's misrepresentations about repair costs, USIC's

payments exceeded those required by the contracts.  *Id.* at 19–25, ¶¶ 63, 74, 86, 91, 99.  The fact that the Court may have to refer to the contracts between USIC and the utility companies does not mean USIC's claims will implicate the utility companies' rights and obligations under the contracts such that they have an interest in this litigation.[4]

Finally, the utility companies' interests in ensuring that claims for damages to their facilities follow the procedures identified in their contracts with USIC, as well as their interests in having disputes over the agreement between the utility companies and USIC litigated in particular venues, are not raised by this litigation.  As discussed above, USIC is not seeking to recover from the utility companies.  Therefore, the utility companies' interest that a particular venue is the forum of disputes between USIC and the utilities is not raised by USIC's claims against PRG.  Moreover, USIC's claims are premised on the fact that PRG abused the process identified in USIC's contracts by

---

[4] PRG suggests that the utility companies are required parties because PRG is in privity with the utility companies.  Docket No. 86 at 14.  PRG appears to argue that, under the doctrine of issue preclusion, the utility companies would be unable to challenge an adverse interpretation by the Court of their contracts with USIC in future litigation because the utility companies are in privity with PRG.  *See* Docket No. 86 at 12.  "Mere presentation of an argument that issue preclusion is possible is not enough to trigger" Rule 19(a)(1)(B)(i).  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir. 1993).  "Rather, it must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments."  *Id.*  PRG's single-sentence argument is insufficient to establish that PRG and the utility companies are in privity or that the alleged injury to the utility companies' interests is more than speculation.  *See Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) ("Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." (citation omitted)); *see also Vertical Bridge REIT, LLC v. Everest Infrastructure Partners, Inc.*, 2025 WL 563752, at *10 (W.D. Pa. Feb. 20, 2025) ("The Everest Defendants' arguments that the Landlords' interests require joinder under Rule 19(a)(1)(B)(i) at this time are vague, and they have not provided arguments about preclusion or estoppel that are nonspeculative enough to trigger mandatory joinder under Rule 19(a)(1)(B)(i).").

systematically overcharging USIC for repairs.  This raises the inference that each of the
claims USIC allegedly overpaid for has already been through the claims handling
process prescribed in USIC's contract with the utility companies.  Finally, the Court
observes that, despite this case being filed in 2021, no utility company has moved to
intervene to protect its alleged interests in ensuring that USIC follows the claims
handling procedures in this case.  This is relevant because it is the utility companies,
not PRG, that must claim an interest in the litigation.  *See* Fed. R. Civ. P. 19(a)(1)(B) ("A
person who is subject to service of process and whose joinder will not deprive the court
of subject-matter jurisdiction must be joined as a party if . . . *that person* claims an
interest relating to the subject of the action" (emphasis added)).  The utility companies
have not claimed an interest in this case, despite having years to do so, and PRG's
attempt to claim an interest on their behalf fails.  *See United States v. Michel*, 879 F.
Supp. 2d 291, 302 (E.D.N.Y. 2012) ("Where, as here, the purportedly necessary party
has not moved to join the instant litigation, this subsection of Rule 19(a) is inapplicable."
(citing *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 48 (2d Cir. 1996) ("[Defendant's]
attempt to assert on behalf of the Ministry its supposed concern about the dilution of its
interest . . . falls outside the language of the rule.  It is the absent party that must 'claim
an interest.'"); *Reit v. Post Props., Inc.,* 2010 WL 743533, at *3 (S.D.N.Y. Feb. 24, 2010)
("It is the absent party that must claim an interest, and no such party has done so
here.") (internal alterations and quotation marks omitted)).

       PRG has failed to demonstrate that the utility companies have an interest related
to this action, which, as a practical matter, would be impaired if the case were to

proceed.  Therefore, PRG has not shown that the utility companies are required parties

under Rule 19(a)(1)(B)(i).

### 3. PRG Would Not Be Subjected to a Substantial Risk of Multiple or Inconsistent Obligations

The Court finds that PRG has not shown that it faces a substantial risk of multiple

or inconsistent obligations.  *See* Fed. R. Civ. P. 19(a)(1)(B)(ii) (a person "must be joined

as a party if: . . . (B) that person claims an interest relating to the subject of the action

and is so situated that disposing of the action in the person's absence may: . . . (ii) leave

an existing party subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations because of the interest.").  PRG argues that, because "USIC's

claims are inextricably intertwined with its contracts with the shared customers and

PRG's contracts with the shared customers, USIC's claims cannot be adjudicated

without . . . exposing PRG to a 'substantial risk' of obligations inconsistent with PRG's

contracts with the shared customers."  Docket No. 86 at 13.  However, PRG does not

identify what these inconsistent obligations are.  The Court fails to see how a judgment

against PRG in this case, which would require PRG to pay USIC damages based on

claims USIC paid on fraudulent invoices, would be inconsistent with any obligation PRG

has under its contracts with the utility companies to assist in handling future claims

against USIC.  USIC's claims seek relief for past harms, and a money judgment does

not implicate PRG's future contractual obligations to the utility companies.  Accordingly,

PRG has failed to demonstrate that the utility companies are required parties under

Rule 19(a)(1)(B)(ii).  PRG has not shown that the utility companies are required parties

under any part of Rule 19(a), and the Court will deny that portion of PRG's motion

seeking to dismiss USIC's claims under Rule 12(b)(7).  Because PRG's motion fails at

the first step of the analysis, the Court will not consider the parties' arguments under Rule 19(b) regarding the feasibility of joining the utility companies as parties to this case.

### B. Rule 12(b)(6)

PRG argues that USIC's claims for negligent misrepresentation and conversion, which it characterizes as "non-intentional tort claims," should be dismissed under the economic loss rule. *Id.* at 16. It also maintains that USIC has failed to plausibly allege its CCPA claim. *Id.* at 18. The Court construes these arguments to be made pursuant to Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

15

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### 1.  Economic Loss Rule

In order to maintain a distinction between tort and contract law, the Colorado Supreme Court has adopted the "economic loss rule."  *See Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000).  Under this rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1020 (10th Cir. 2018) (quoting *Town of Alma*, 10 P.3d at 1264).  The focus of the inquiry is on "the source of the duty alleged to have been violated."  *Town of Alma*, 10 P.3d at 1262–63.  "Tort obligations generally arise from duties imposed by law," while "contract obligations arise from promises made between parties."  *Id*. at 1262.  A "breach of duty arising from a contract must be redressed under the parties' contract," but "a breach of

16

duty arising independently of the parties' contractual duties may support a tort action."
*Mid-Century Ins. Co. v. HIVE Constr., Inc.*, --- P.3d ----, 2025 WL 1153463, at *4 (Colo.
2025).  "In determining the source of the duty at issue, courts consider whether (1) the
relief sought in negligence is the same as the contractual relief; (2) there exists a
recognized common law duty of care in negligence; and (3) the negligence duty and
contractual duty differ in any way."  *Id.* (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d
66, 74 (Colo. 2004)).  "If the parties have memorialized the applicable duty of care in
their contract (i.e., if the duty is contained within or imposed under the contract), then no
duty exists independent of the contract, and the economic loss rule will apply to bar a
tort claim."  *Id.* (citing *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 551
P.3d 655, 664 (Colo. 2024)).  However, the economic loss rule does not apply if there is
"no contract that could have subsumed [the] identical tort duties."  *Dream Finders
Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 120 (Colo. App. 2021).  The Court
will consider separately the application of the economic loss rule to PRG's claims for
conversion and negligent misrepresentation.

### a.  Conversion

The Colorado Supreme Court recently reaffirmed that the economic loss rule
"generally should not be available to shield intentional tortfeasors from liability for
misconduct that happens also to breach a contractual obligation."[5]  *HIVE*, 2025 WL
1153463, at *5 (citing *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1154 n.6 (Colo.

---

[5] The parties assume that Colorado law applies to USIC's claims.  *See, e.g.*,
Docket No. 86 at 16; Docket No. 95 at 14.  Accordingly, the Court will apply Colorado
law.  *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the
parties' arguments assume that Colorado law applies, we will proceed under the same
assumption.").

2019)).  In *HIVE*, the court held that, while intentional torts are excepted from the
economic loss rule, willful and wanton tortious conduct is not excluded.  *Id.* at *4 ("We
have never excepted willful and wanton tort claims from the economic loss rule.").  The
court explained that an "intentional tort claim is distinct from a willful and wanton tort
claim" because "[i]ntentional conduct requires that the actor intend the result of the
conduct or know that the conduct is likely to bring about that result" whereas willful and
wanton conduct "refers to acts or omissions committed purposely but without regard to
the consequences of those acts or omissions."  *Id.* at *5.

USIC argues that, because conversion is an intentional tort, PRG's arguments
regarding the economic loss rule do not apply to its conversion claim.  Docket No. 95 at
14 n.5 (citing *Registry Sys. Int'l, Ltd. v. Hamm*, 2012 WL 4476635, at *3 (D. Colo. Sept.
28, 2012) ("Conversion is an intentional tort.")).  PRG responds that, although
conversion is "often called an intentional tort, conversion 'does not require that a
tortfeasor act with the specific intent to permanently deprive the owner of his or her
property.'"  Docket No. 103 at 9 (quoting *Harris Group, Inc. v. Robinson*, 209 P.3d 1188,
1199 (Colo. 2009)).  As such, PRG claims that conversion is not an intentional tort and
is subject to the economic loss rule.  *Id.*

"Conversion under Colorado law is 'any distinct, unauthorized act of dominion or
ownership exercised by one person over personal property belonging to another.'"
*Scott v. Scott*, 428 P.3d 626, 634 (Colo. App. 2018) (quoting *Itin v. Ungar*, 17 P.3d 129,
135 n.10 (Colo. 2000)).  "Colorado courts generally recognize five elements comprising
the claim: (1) the defendant exercised dominion or control over property; (2) the
property belonged to the plaintiff; (3) the defendant's exercise of control was not

18

authorized; (4) the plaintiff demanded the return of the property; and (5) the defendant

refused." *ProKASRO Servs. USA, Inc. v. DHL Express (USA), Inc.*, No. 23-cv-02651-

NYW-SBP, 2025 WL 446138, at *13 (D. Colo. Feb. 10, 2025).

> The act constituting "conversion" must be an intentional act, but it does not
> require wrongful intent.  Conversion is a species of strict liability in which
> questions of good faith, lack of knowledge, and motive are ordinarily immaterial.
> A person who mistakenly believes that his or her conduct is legal may
> nonetheless commit conversion.

*Scott*, 428 P.3d at 634 (alterations omitted) (quoting 18 Am. Jur. 2d Conversion § 3

(2017)).

Courts have distinguished claims for conversion and claims for civil theft on the

basis that conversion does not require the defendant to intend to permanently deprive

the plaintiff of its property.  *Id.* ("Unlike civil theft, conversion *does not* require that the

converter act with the specific intent to permanently deprive the owner of his or her

property.").  However, PRG fails to explain how the distinction between civil theft and

conversion is relevant to determining whether conversion is subject to the economic

loss rule.  PRG does not address the fifth element of a conversion claim, which requires

the defendant to knowingly refuse to return the property, an intentional act.  The *HIVE*

court did not distinguish between different kinds of "intentional conduct" when holding

that the economic loss rule "should not be available to shield intentional tortfeasors from

liability."  *HIVE*, 2025 WL 1153463, at *4–5.  Rather, the court found that "[i]ntentional

conduct," which "requires that the actor intend the result of the conduct," is not covered

by the economic loss rule.  *Id.*  Because conversion is intentional conduct, *Scott*, 428

P.3d at 634 ("'conversion' must be an intentional act"), it is outside the scope of the bar

created by the economic loss rule.  *HIVE*, 2025 WL 1153463, at *4–5.  Therefore, the

Court will deny that portion of PRG's motion seeking to dismiss USIC's conversion claim.

### b. Negligent Misrepresentation

PRG argues that USIC's claim for negligent misrepresentation should be dismissed because its duty to accurately invoice USIC for the costs of repairing the damages to the utility companies' facilities arises from the parties' contracts with the utility companies.  Docket No. 86 at 17 ("the duty to issue invoices that accurately reflect the services performed under the parties' agreements is inherent in every contract").  USIC argues that, because the parties had no contract between them, the economic loss rule does not apply to this case.  Docket No. 95 at 14.  PRG acknowledges that there is no contract between PRG and USIC.  *See* Docket No. 86 at 16.  However, it maintains that the economic loss rule applies because PRG's and USIC's contracts with the utility companies constitute a "network of interrelated contracts" such that PRG's duty not to negligently bill USIC has been subsumed by the parties' contracts.  *Id.* at 17 (quoting *BRW*, 99 P.3d at 74).

The Colorado Supreme Court's analysis in *BRW* is instructive in this case.  In *BRW*, the City and County of Denver ("Denver") contracted with defendant BRW, Inc. ("BRW") to assist with designing and planning the construction of two bridges.  *BRW*, 99 P.3d at 68.  BRW subcontracted with PSI, Inc. ("PSI") to perform inspections on the project.  *Id.*  Denver separately contracted with Edward Kraemer & Sons, Inc. ("Kraemer") as the general contractor.  *Id.*  Kraemer subcontracted with plaintiff Dufficy & Sons, Inc. ("Dufficy") to paint parts of the bridges.  *Id.*  Thus, there were two distinct "chain[s]" of contracts.  *Id.* at 69, 72.  The first chain of contracts was between Denver, BRW, and PSI for the design and inspection of the bridges.  *Id.* at 69.  The second

chain of contracts was between Denver, Kraemer, and Dufficy for the construction and painting of the bridges.  *Id.*  However, there was no contractual link between BRW and Dufficy.  *Id.*

The overall project incurred unexpected delays due to the painting project, "which resulted in economic loss to Dufficy."  *Id.*  In particular, the BRW design specifications required Dufficy to use a specific type of paint primer that took over two months to cure. *Id.* at 69–70.  Dufficy was also required to repaint some of the steel bridge parts due to peeling.  *Id.*  Dufficy brought claims for negligence and negligent misrepresentation against BRW, arguing that BRW's design specifications had caused Dufficy's injuries, that BRW had failed to exercise reasonable care when preparing the bridge designs, and that PSI had failed to properly inspect the bridges.  *Id.* at 70.

The court's analysis proceeded in two parts.  First, the court considered Dufficy's contract to determine whether it had a contractual remedy for its injuries.  *Id.* at 72–73. It then determined whether the duty BRW allegedly breached arose out of BRW's contract with Denver.  *Id.* at 73–75; *see also Veolia Water Techs., Inc. v. Antero Treatment LLC*, 564 P.3d 1089, 1108 (Colo. App. 2024) (considering the interrelatedness of the contracts before analyzing the contractual duty).

### i.  Network of Contracts

In *BRW*, the court recognized that Dufficy did not have a contract with BRW but held that "the economic loss rule applies when the claimant seeks to remedy only an economic loss that arises from interrelated contracts."  *BRW*, 99 P.3d at 72.  The court explained that

> The economic loss rule applies between and among commercial parties for three main policy reasons, none of which depends upon or is limited to the existence of a two-party contract: (1) to maintain a distinction between contract and tort law;

> (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort.

*Id.* (citing *Town of Alma*, 10 P.3d at 1262, 1264).  The court reasoned that "[t]he policies underlying the application of the economic loss rule to commercial parties are unaffected by the absence of a one-to-one contract relationship."  *Id.*  "Even though a subcontractor may not have the opportunity to directly negotiate with the engineer or architect," the court found that a subcontractor "has the opportunity to allocate the risks of following specified design plans when it enters into a contract with a party involved in the network of contracts."  *Id.*  The court held that the economic loss rule applied, despite a lack of contractual privity between Dufficy and BRW for two reasons.  First, "Dufficy had the opportunity to allocate the risks that might occur in following BRW's plans . . . but failed to do so.  Rather . . . it agreed to be bound by BRW's plans and specifications and did not obtain provisions protecting itself from economic loss."  *Id.* at 73.  Second, Denver "impliedly warranted the adequacy of the plans and specifications" and, as such, Dufficy could "sue the City for economic loss due to faulty plans and specifications."  *Id.*  The court concluded that, because Dufficy's contract required it "to resolve all disputes regarding the contract, including the plans and specifications, pursuant to the City's administrative claims procedure," the Dufficy had bargained for this remedy and that "the contracts' terms control."  *Id.*

Although the parties' dispute does not arise from a series of construction contracts, *BRW*'s reasoning applies equally to this case.  USIC's contracts involve sophisticated commercial parties prospectively allocating risk when locating utilities during nearby excavation.  *See* Docket No. 1 at 1, 2, 9–10, ¶¶ 1, 6–8, 15–19 ("USIC, its

Customers, and excavators all understand that excavation poses risks of damage to

underground utility facilities, and USIC works together with its Customers and

excavators to avoid such damage to the greatest extent possible.").  Therefore, the

absence of a contract between USIC and PRG is not determinative.  *BRW*, 99 P.3d at

72 ("The policies underlying the application of the economic loss rule to commercial

parties are unaffected by the absence of a one-to-one contract relationship.").

USIC could also prospectively negotiate the risk of inaccurate billing.  The utility

companies' claims against USIC arise from USIC's performance of its contractual

obligations.  Docket No. 1 at 10, ¶¶ 18–19.  Therefore, although USIC alleges that it has

no opportunity to negotiate with PRG over its claims handling process, *id.*, ¶ 20, the

allegations in the complaint demonstrate that USIC has the opportunity to negotiate with

the utility companies to ensure that disputes over claims are resolved with accurate

information.  *Id.* at 2, 10, ¶¶ 8, 19 ("many utility companies contract with a third-party

company like USIC to perform the location services" and "[w]hen Claims arise, USIC

works together with the Customer to identify the cause and extent of the damage");

*BRW*, 99 P.3d at 73 (subcontractors had the ability to allocate risk before agreeing to

construction project).

Moreover, the allegations in the complaint indicate that USIC has a contractual

remedy against the utility companies for the integrity of claim resolution.  The complaint

alleges that the utility companies

> have hired PRG as a third-party administrator to help these Customers handle
> their Claims against USIC.  As a third-party administrator, PRG processes
> invoices for each Customer and submits its own invoices for specific Claims to
> USIC for payment.  These invoices contain PRG's summary and statement of the
> expenses incurred by the respective Customer in regard to a Claim.

Docket No. 1 at 10, ¶ 21.  Thus, the complaint alleges that the utility companies have

assigned to PRG the utility companies' responsibility for invoicing USIC for repair

costs.[6]  "An assignment does not relieve the assignor from liability under the contract.

Rather, after the assignment, the assignee becomes primarily liable for the obligations

under the contract, while the assignor remains secondarily liable."  *Roget v. Grand*

*Pontiac, Inc.*, 5 P.3d 341, 345 (Colo. App. 1999), *opinion modified on denial of reh'g*

(Jan. 6, 2000).  Therefore, USIC has a contractual remedy against the utility companies

based on the invoices it received while processing the utility companies' claims.  *See*

---

[6] PRG attaches to its motion to dismiss contracts between USIC and Charter
Communications, Inc. ("Charter"), Docket No. 87-1, Duke Energy Business Services
LLC ("Duke"), Docket No. 87-2, and Mediacom Communications Corporation
("Mediacom"), Docket No. 87-3.  Generally, a court should not consider evidence
beyond the pleadings when ruling on a 12(b)(6) motion, *Waller v. City & Cnty. of
Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019), and if the court considers matters
outside the complaint, "the motion must be treated as one for summary judgment under
Rule 56."  Fed. R. Civ. P. 12(d).  However, the Tenth Circuit has recognized an
exception to this rule: the "district court may consider documents referred to in the
complaint if the documents are central to the plaintiff's claim and the parties do not
dispute the documents' authenticity."  *Waller*, 932 F.3d at 1282.  The Court finds that it
can consider the attached contracts because they are referenced in USIC's complaint,
are central to USIC's claims, and USIC does not dispute the contracts' authenticity.
Docket No. 1 at 2, 6–10, ¶¶ 8, 12; *see also* Docket No. 95.  These contracts make clear
that the utility companies were responsible for invoicing USIC for the cost of repairs.
*See* Docket No. 87-1 at 54 ("Charter will investigate all incidents of Damage to Charter's
Facilities for which it has been notified and provide a written report of its findings to
Contractor . . . .  Such report will contain Charter's determination as to whether the
Damage to Charter's Facilities constitutes a Locator At Fault Damage, an invoice, and
supporting Repair Cost documentation."); Docket No. 87-3 at 22 ("All damage identified
by Customer to be Locator-At-Fault Damage will be submitted in writing to USIC.");
Docket No. 87-2 at 73 ("Duke Energy will provide to USIC a copy of PRG's Investigator
Report" and the findings of the report are binding unless "USIC disputes PRG's Locator
At Fault determination in writing within . . . ninety 90 days post Repair Cost invoice").
However, because the allegations in the complaint also demonstrate that it was the
utility companies' responsibility to invoice USIC, the Court's consideration of these
contracts do not affect the Court's analysis.

*BRW*, 99 P.3d at 73 (Dufficy could "sue the City for economic loss due to faulty plans and specifications.").

In addition, it does not matter that USIC does not have this contractual remedy against PRG, only that it has a contractual remedy for its economic losses. *See Town of Mancos v. Aqua Eng'g, Inc.*, 2024 WL 4034064, at *4 (Colo. App. Mar. 28, 2024) ("The Town contends that it is not fair to bar its tort claims against Aqua while simultaneously dismissing its contract claim for lack of a contractual relationship. . . . But where the claim arises from a network of interrelated contracts, the plaintiff will not necessarily have a remedy against every party in that network. The source of that remedy depends on the terms of the parties' contracts.").[7]  Therefore, the Court finds the parties' dispute arises from a "network of contracts" such that a one-to-one contract between USIC and PRG is not required for the economic loss rule to apply pursuant to Colorado law. *BRW*, 99 P.3d at 72.  The Court will next consider whether PRG's common law and contractual duties are the same.

### ii. PRG's Duty

*BRW* is also instructive in determining whether the duty PRG allegedly breached is the same as its contractual duties under the network of contracts at issue in this case. In *BRW*, the court stated that, as part of "Dufficy's negligence claim against BRW, Dufficy asserts that BRW owed Dufficy 'a professional duty to exercise reasonable care,

---

[7] In its response, USIC relies on *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186 (Colo. App. 2008), for the proposition that "the economic loss rule does not bar claims by a party that has no contractual remedy against the defendant."  Docket No. 95 at 14. The Colorado Court of Appeals has more recently reached a different conclusion. *Town of Mancos*, 2024 WL 4034064, at *4.  In light of the apparent conflict, the Court finds that *BRW* provides the best guidance in this case.  Given the similarities between *BRW* and the circumstances of this case, *BRW* indicates that USIC's claims are barred by the economic loss rule. *See BRW*, 99 P.3d at 73.

including, but not limited to, preparing design drawings and specifications that were

suitable for construction of the Project.'  Dufficy alleges that BRW breached this duty of

care; thus, it is entitled to recover money damages under tort law."  *BRW*, 99 P.3d at 74.

However, the court explained that

> the BRW contract itself required BRW to meet this standard of care.  The BRW
> contract provides that the drawings and specifications prepared by BRW "must
> represent a thorough study and competent solution for the Project as per usual
> and customary professional standards and shall reflect all architectural and
> engineering skills applicable to that phase of the Project."  The contract also
> states that the plans and specifications "shall be adequate and sufficient for the
> proper construction of the Project."  Thus, the contract contains the duty BRW
> allegedly breached.

*Id.*

Dufficy's negligent misrepresentation claim against BRW was based on

inaccurate inspection reports by PSI given to Dufficy.  *Id*. at 74–75 ("Dufficy's complaint

alleges that BRW, through its agent PSI, repeatedly made inaccurate representations to

Dufficy concerning how Coblaco was painting the Project.").  The court found that "BRW

hired PSI to provide these inspection services, and the contract between PSI and BRW

required PSI to use care.  The duty of care was contained in these contractual

provisions."  *Id.* at 75.  The court held that (1) "the alleged negligent misrepresentation

complained of in this case occurred during performance, by which time the parties had

bargained for the allocation of risks, duties, and remedies," (2) that "Dufficy failed to

protect itself from economic loss arising from PSI's alleged misrepresentations," and (3)

that "the contracts' terms are controlling."  *Id.*

Here, the complaint contains no allegations regarding the contractual standard of

care PRG owes the utility companies.  *See* Docket No. 1.  The complaint alleges only

that the utility companies "have hired PRG as a third-party administrator to help these

Customers handle their Claims against USIC" and that "PRG processes invoices for each Customer and submits its own invoices for specific Claims to USIC for payment." *Id.* at 10, ¶ 21. These allegations do not define PRG's standard of care under its contracts with the utility companies, and the Court cannot effectively compare PRG's common law and contractual duties. *See HIVE*, 2025 WL 1153463, at *4 ("In determining the source of the duty at issue, courts consider whether . . . the negligence duty and contractual duty differ in any way."). Moreover, although PRG has attached copies of some of USIC's contracts to its motion to dismiss, it has not attached copies of its own contracts with the utility companies. *See* Docket No. 86 at 8.

However, PRG argues that it is not plausible, taking the allegations of the complaint as true, that PRG's fraudulent billing practices did not violate an express contractual duty. *Id.* at 18. USIC appears to concede this point. *See* Docket No. 95 at 5 ("PRG concedes that the customers have no viable contract rights supporting deceptive practices." (quoting Docket No. 86 at 17 ("[T]he duty to issue invoices that accurately reflect the services performed under the parties' agreements is inherent in every contract. It is implausible to think that any contract would countenance overbilling.")).

PRG argues that, regardless of the express terms of its contracts with the utility companies, each of these contracts includes an implied duty of good faith and fair dealing. Docket No. 86 at 18. PRG maintains that the alleged billing practices in the complaint would violate its duty of good faith and fair dealing, and therefore its common law duties are the same as its contractual duties. *Id.*

27

"The covenant of good faith and fair dealing exists in every contract to enforce the reasonable expectations of the parties*." Veolia Water Technologies, Inc. v. Antero Treatment LLC*, 564 P.3d 1089, 1109 (Colo. App. 2024) (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 499 (Colo. 1995)).

> The duty specifically applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time. A party breaches the implied duty of good faith and fair dealing by using the discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract.

*Id*. (internal quotations, alterations, and citations omitted). "Discretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 967 (Colo. App. 2015) (quoting *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006)).

USIC argues that "PRG's reliance on an implied covenant of good faith and fair dealing does not implicate the economic loss rule because PRG overlooks which entity would *owe* the implied contractual duty, and to whom." Docket No. 95. at 16. However, in *BRW*, the Colorado Supreme Court did not analyze the similarity of BRW's common law and contractual duties by considering to whom these duties were owed. *See BRW*, 99 P.3d at 74–75. Instead, the court found that the obligation BRW owed to Denver to use reasonable care in designing the bridges was the same as its negligence duty to Dufficy. *Id.* at 74. Similarly, the court found that the duty PSI owed to BRW "to inspect the plans and specifications with care, skill, and diligence" subsumed PSI's duty not to make negligent misrepresentation to Dufficy. *Id.* at 75. Therefore, the Court rejects

28

USIC's argument that the contractual duty and the common law duty must be owed to the same person.

USIC argues that "PRG does not offer any explanation of how its false billing would violate an implied covenant in its *own* contracts with the shared customers, since the conduct harms a third party (USIC) that is not an intended beneficiary of the contracts." Docket No. 95 at 16. The covenant of good faith and fair dealing requires that PRG assist with processing claims against USIC in a manner that does not deprive the utility companies of the benefit of their contracts. Failing to accurately invoice USIC would violate this covenant. If PRG underbills USIC, the utility companies do not receive full reimbursement for their repair costs. If PRG overbills USIC, the utility companies are subject to secondary liability for the overbilling for the reasons discussed above. *See Roget*, 5 P.3d at 345. Under either circumstance, the utility companies do not receive the benefit of their agreement for assistance in handling claims against USIC. Therefore, the Court finds that, even if PRG's contracts do not expressly prohibit negligent invoicing, the implied covenant of good faith and fair dealing incorporates PRG's duty not to overbill USIC. *See Dream Finders*, 506 P.3d at 123 (finding that, under the implied covenant of good faith and fair dealing, "Weyerhaeuser owed Homes and Mandarin concurrent contractual and tort duties not to engage in fraud or to misrepresent the condition and safety of its joists. Because the duties overlapped, under the economic loss rule, a breach of the duties supported a claim for breach of contract but not a tort claim."); *see also Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 293 (Colo. App. 2009), *as modified on denial of reh'g* (June 11, 2009) ("We reject Hamon's contention that the implied covenant of good faith and fair

dealing cannot, as a matter of law, subsume a claim of fraud in the performance of a

contract.").  Because it is implausible that PRG's contractual obligation to accurately bill

USIC does not include its duty to refrain from negligently misrepresenting the costs of

repairs, and because, regardless of the express contractual terms, the implied covenant

of good faith and fair dealing imposes the same duty as tort law in this case, the

economic loss rule bars USIC's claim for negligent misrepresentation.  The Court will

grant that portion of PRG's motion seeking to dismiss USIC's negligent

misrepresentation claim.

### 2.  CCPA Claim

PRG argues that USIC has failed to plausibly state its CCPA claim.  Docket No.

86 at 18.  To state a claim under the CCPA, a plaintiff must establish the following

elements:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that
> the challenged practice occurred in the course of defendant's business, vocation,
> or occupation; (3) that it significantly impacts the public as actual or potential
> consumers of the defendant's goods, services, or property; (4) that the plaintiff
> suffered injury in fact to a legally protected interest; and (5) that the challenged
> practice caused the plaintiff's injury.

*Warming Trends, LLC v. Stone,* No. 19-cv-03027-PAB-STV, 2023 WL 2713954, at *7

(D. Colo. Mar. 30, 2023) (quoting *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898

F. Supp. 2d 1213, 1219 (D. Colo. 2012)); *see also Renfro v. Champion Petfoods USA,*

*Inc.*, 25 F.4th 1293, 1301 (10th Cir. 2022).

"Due to the CCPA's underlying goal of protecting consumers and the public,

plaintiffs are prohibited from bringing purely private causes of action under the CCPA."

*Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors,*

519 F. Supp. 3d 893, 919 (D. Colo. 2021), *aff'd sub nom. Am. Soc'y of Home*

*Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238 (10th Cir.

2022).  In analyzing the third element, a significant public impact, Colorado courts

consider three factors: (1) "the number of consumers directly affected by the challenged

practice," (2) the "relative sophistication and bargaining power of the [affected]

consumers," and (3) "evidence that the challenged practice has previously impacted

other consumers or has the significant potential to do so in the future."  *Rhino Linings*

*USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003).

In the complaint, USIC alleges that

> PRG's deceptive trade practices significantly impact the public as actual or
> potential consumers of PRG's services because PRG is a nationwide
> organization that recoups millions of dollars of utility property damage repair
> costs each year for its customers and, as a result, PRG's deceptive trade
> practices have a significant potential to affect the general public because its
> fraudulent conduct impacts the cost to perform a statutorily required duty of
> utilities intended to protect the public's utility infrastructure and general safety.
> As a result, utilities, all of which must have their facilities located, will incur
> additional locate expenses that ultimately will affect the cost that the public pays
> for all manner of essential utilities, including gas, electric, telephone,
> communications, sewer, and water.  Furthermore, the excavation and damage
> prevention industry is a wide industry with thousands of participants whom PRG
> targets with its cost recovery services.

Docket No. 1 at 25, ¶ 100.  The complaint further alleges that

> The damage that USIC has suffered is not unique to USIC's relationship with
> PRG but is a feature of PRG's general pattern and practice of false billing.  In
> fact, USIC has been contacted by at least one other business in the utility
> maintenance and construction industry complaining specifically about PRG's
> fraudulent billing practices.  It is extremely likely that other businesses have
> suffered and will suffer similar injuries through PRG's deceptive practices, which
> will further increase the cost of utilities to the public.

*Id.* at 26, ¶ 102.

PRG argues that USIC has failed to plausibly allege the third element of its

CCPA claim, that PRG's alleged billing practices had a significant public impact.  Docket

No. 86 at 19–21.  First, PRG maintains that USIC's reliance on the potential increase in

utility costs to the public is misplaced because the Colorado Supreme Court has held

that "it is not enough that the defendant's industry affects the public interest."  *Id.* at 19

(quoting *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 155 (Colo. 2007)).  Instead,

"the challenged *practice* must significantly impact the public."  *Id.* (quoting *Brodeur*, 169

P.3d at 156).  Second, PRG argues USIC's allegation that "least one other business in

the utility maintenance and construction industry" has complained about PRG's

fraudulent billing practices is not plausible because the allegation does not include any

details about who the other business impacted by PRG's trade practice might be.  *Id.* at

19–20.  Regardless of the allegation's plausibility, PRG asserts that the allegation that

two businesses have been impacted by PRG's billing practices is insufficient to

demonstrate a significant public impact.  *Id.* at 20.  USIC responds that the allegations

in the complaint demonstrate that USIC's CCPA claim is not based on a purely private

wrong.  Docket No. 95 at 19.  Instead, it claims that PRG's billing practices impact third

parties in the "excavation and damage prevention industry" and that PRG's alleged

fraud will affect "other businesses performing public services and the public."  *Id.*

The Court finds that USIC has failed to plausibly allege a significant public

impact.  Considering the first *Rhino Linings* factor, the number of consumers directly

affected by the challenged practice, the Court notes that the public impact underlying

USIC's CCPA claim must be "consumer-related."  *NetQuote, Inc. v. Byrd*, 504 F. Supp.

2d 1126, 1135, 1137 (D. Colo. 2007) ("But regardless of whether the plaintiff is a

'consumer' of a defendant's products or services, the Colorado Supreme Court has

interpreted the CCPA as having a 'public impact' element because 'the CCPA is clearly

enacted to control various deceptive trade practices in dealing with the public.'

'Therefore, the challenged practice must significantly impact the public as actual or

potential consumers of the defendant's goods, services, or property.'" (quoting *Hall v.*

*Walter*, 969 P.2d 224, 234 (Colo. 1998)).  The complaint alleges that USIC has no

relationship with PRG and that USIC is not a consumer of PRG's services.  Docket No.

1 at 10, ¶ 20 ("USIC does not have a contractual relationship with PRG, nor is USIC a

third-party beneficiary of any of PRG's contracts with any Customer.").  Moreover,

members of the public who pay for utility services are not consumers of PRG's services;

they are consumers of the utility companies' services.  USIC provides no support for the

proposition that the Court can consider the speculative and indirect harm to utility

customers alleged in the complaint when evaluating the public impact of PRG's billing

practices.  *See NetQuote*, 504 F. Supp. 2d at 1137 (rejecting plaintiff's argument that

defendant's practice of providing false leads to insurance brokers "harmed the

insurance-buying public" because the "court is obligated to ascertain 'the number of

consumers *directly* affected by the challenged practice'" and the "effects alleged here

are indirect at best" (quoting *Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006)).

Here, the complaint identifies ten potential customers who use both USIC and

PRG's services.  *See* Docket No. 1 at 3–6, ¶ 11.  However, the complaint alleges that

"none of the potential shared Customers are incorporated in or have their principal place

of business in Colorado" and that "USIC's current contracts with its largest Customers

(that are also potential shared Customers with PRG) . . . concern performance of

services outside Colorado."  *Id.* at 3, ¶¶ 10, 11 (e.g. "Recent contracts between USIC

and AT&T (which concern services outside Colorado) contain forum-selection clauses

mandating jurisdiction in Texas or else in states where the damage occurred—all of
which are outside Colorado, because USIC does not contract with AT&T for services in
Colorado."). "The purpose of the CCPA is to protect Colorado consumers." *O'Connor
v. BMW of N. Am., LLC*, No. 18-cv-03190-CMA-STV, 2020 WL 1303285, at *6 (D. Colo.
Mar. 19, 2020) (citing *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1241–42
(D. Colo. 2010)); *see also Airquip, Inc. v. HomeAdvisor, Inc.*, No. 16-cv-01849-PAB-
KLM, 2017 WL 4222618, at *6 (D. Colo. Sept. 21, 2017) (holding that plaintiff failed to
demonstrate that the Colorado legislature intended the CCPA to have extraterritorial
effects); *Shostrom v. Ethicon, Inc.*, No. 20-cv-1933-WJM-STV, 2022 WL 2237341, at *2
(D. Colo. June 22, 2022) ("The Court agrees with Defendants' statement that evidence
of out-of-state lawsuits cannot make it more or less probable that the *Colorado*
consumers protected by the Act were harmed." (quotations and citation omitted)). Thus,
while the complaint alleges that PRG is a Colorado-based company, Docket No. 1 at 1,
¶ 2, the complaint fails to allege that PRG has any Colorado customers. Moreover, an
inference that PRG's business practices have a significant public impact on Colorado
consumers is implausible because the complaint identifies PRG and USIC's largest
shared customers and disclaims any Colorado related injuries for these customers. *Id.*
at 3–6, ¶ 11. Lastly, although the Court has addressed the fact that PRG's invoicing
practice may give rise to secondary liability for the utility companies to USIC, USIC does
not allege it has pursued any utility companies for damages from PRG's alleged fraud or
any other direct effects from PRG's billing practices on its customers. Therefore, the
first *Rhino Linings* factor indicates that there is no significant public impact from PRG's

allegedly fraudulent billing practices. *Rhino*, 62 P.3d at 149 (considering "the number of consumers directly affected by the challenged practice").

Second, the only potential consumers of PRG's services that USIC identifies in its complaint are national and regional utility companies. *Id.* Utility companies are sophisticated entities, and the complaint contains no allegation to suggest that the utility companies lack bargaining power with PRG over its services. *See NetQuote*, 504 F. Supp. 2d at 1136 ("NetQuote does not suggest that the insurance companies who are potential consumers of insurance-quote web sites lack 'relative sophistication and bargaining power.'" (quoting *Crowe*, 126 P.3d at 208)). The second *Rhino Linings* factor weighs against a finding that there is a significant public impact from PRG's allegedly fraudulent billing practices. *Rhino Linings*, 62 P.3d at 149 (considering the "relative sophistication and bargaining power of the [affected] consumers").

Finally, as discussed above, the complaint contains no allegations that show that PRG's challenged billing practices are presently impacting PRG's consumers, or that they have ever done so. Instead, the complaint's allegations address the "significant potential" harm PRG's practices "will" have in the future. Docket No. 1 at 25, ¶ 100. Furthermore, although the complaint suggests that PRG's practices might eventually lead to utility companies passing on certain costs to their customers, the complaint also alleges that the "fruits of these false and fraudulent billing practices inure to the benefit of PRG alone, and a judgment in USIC's favor would not affect any Customer's right to recover amounts actually expended in connection with a Claim." *Id.* at 16, ¶ 49. Moreover, even though the utility companies may face potential future harm from liability to reimburse USIC for overpayments based on PRG's billing practices, the harm is too

speculative to show that PRG's billing practices have "the significant potential" to impact PRG's customers in the future.  *See Rhino Linings*, 62 P.3d at 149 (considering "evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future").  Therefore, the third *Rhino Linings* factor suggests that there is no significant public impact from PRG's allegedly fraudulent billing practices.  Even if the utility companies' potential liability is not speculative, considering the three *Rhino Linings* factors together, the Court finds that USIC has failed to plausibly allege a significant public impact from PRG's allegedly fraudulent billing practices.  Therefore, the Court will grant that portion of PRG's motion to dismiss seeking to dismiss USIC's CCPA claim.

## III.    MOTION TO TRANSFER VENUE

PRG argues that USIC's claims are subject to the forum selection clauses in USIC's contracts with the utility companies.  Docket No. 84 at 1–3.  In particular, PRG argues that 97% of the 33,000 claims submitted by PRG were on behalf of Charter, Duke, Mediacom, and Comcast Cable Communications Management LLC ("Comcast"). *Id.* at 14.  PRG maintains that claims to recover overpayments made to these companies are subject to the terms and conditions of the contracts giving rise to the utility companies' claims against USIC.  *Id.* at 3–4.  PRG asks the court to transfer the respective portions of USIC's claims to the districts identified by the forum selection clauses in USIC's contracts with Charter, Duke, Mediacom, and Comcast pursuant to 28 U.S.C. § 1404(a).  *Id.* at 10.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28

U.S.C. § 1404(a).  Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  To warrant a transfer, the moving party must establish that: "(1) the action could have been brought in the alternate forum; (2) the existing forum is inconvenient; and (3) the interests of justice are better served in the alternate forum."  *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991)).

"Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' . . . the clause may be enforced [by] a motion to transfer under § 1404(a)."  *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Tex.*, 571 U.S. 49, 59 (2013).  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  *Id.* at 62 (footnote omitted).

A mandatory forum-selection clause is presumed valid "unless the party challenging it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (internal quotation and alterations omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  A forum-selection clause is mandatory if it "contain[s] clear language showing that jurisdiction is appropriate only in the designated forum."  *K & V Scientific Co., Inc. v. Bayerische*

*Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002) (citation

omitted).  A forum selection clause is applicable if the dispute is within its scope based

on "ordinary principles of contractual interpretation."  *Kelvion, Inc. v. PetroChina*

*Canada, Ltd.*, 918 F.3d 1088, 1092 (10th Cir. 2019).

PRG argues that USIC is attempting to impermissibly amalgamate each instance

where PRG allegedly overbilled USIC into a single action.  Docket No. 84 at 15.  PRG

appears to contend that each of these instances of overbilling gives rise to a separate

series of claims.  *See id.*  PRG categorizes these instances of alleged fraud based on

the utility company that initially contracted with USIC to perform the utility location

service.  *Id.* at 3–10.  Therefore, PRG argues that there are five categories of claims in

this case: claims based on instances where USIC overpaid to repair (1) Comcast

facilities, (2) Charter facilities, (3) Duke facilities, (4) Mediacom facilities, and (5)

facilities owned by a different utility company.  *Id.*  PRG maintains that each category of

USIC's claims is subject to the forum selection clause in USIC's contract with the

respective utility companies.  *Id.* at 11.  For example, PRG asserts that USIC's claims to

recover for overpayments made to PRG on behalf of Comcast are subject to the forum

selection clause in USIC's contract with Comcast.  *Id.* at 13.  Although PRG

acknowledges that it is not a party to USIC's contracts with the utility companies, PRG

argues that courts in this district "have allowed non-signatories to enforce a forum

selection clause when the non-signatory is closely related to the contractual

relationship, it was foreseeable that the non-signatory could seek to enforce the forum

selection clause, and enforcement of the forum selection clause would be fair and

reasonable."  *Id.* at 12 (citing *Motto Franchising, LLC v. UMortgage LLC*, No. 23-cv-

00609-RM-SBP, 2024 WL 1509178, at *10 (D. Colo. Feb. 16, 2024), *report and recommendation adopted*, 2024 WL 1508824 (D. Colo. Mar. 6, 2024); *Otimo Music, Inc. v. Royalty Exch., Inc.*, No. 18-cv-00006-RBJ, 2018 WL 6697073, at *4–5 (D. Colo. Dec. 20, 2018); *PFC Payment Sols., LLC v. Element Payment Servs., Inc.*, No. 12-cv-01472-CMA-MJW, 2012 WL 3264305, at *3–4 (D. Colo. Aug. 10, 2012)).  PRG asserts that it can enforce the forum selection clauses in this case because USIC's claims against PRG are closely related to USIC's contracts with the utility companies.  *Id.* at 12–14.

Regardless of whether USIC's claims are closely related to its contracts with the utility companies, the Court finds that PRG has failed to demonstrate that 28 U.S.C. § 1404(a) authorizes the Court to separate parts of USIC's claims in the manner PRG requests.  "Section 1404(a) only authorizes the transfer of an entire action, not individual claims."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991).  "A court acting under § 1404(a) may not transfer part of a case for one purpose while maintaining jurisdiction for another purpose; the section 'contemplates a plenary transfer' of the entire case."  *Id.*  PRG argues that it is not requesting that the Court "split USIC's claims."  Docket No. 102 at 2.  "Rather, PRG argues that *all of* USIC's claims that fall within the scope of the four identified contracts must be transferred in accordance with the four forum selection clauses in those contracts."  *Id.* In its reply, PRG argues that the Court should first sever USIC's claims pursuant to Federal Rule of Civil Procedure 21 based on the utility company whose claims USIC overpaid and then transfer these severed claims to the forums identified in the various forum selection clauses.  *Id.* at 2–3 (citing *Chrysler*, 928 F.2d at 1519).

"Rules 19, 20 and 21 govern joinder and misjoinder of parties."  *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 13-cv-00769-MSK-KMT, 2014 WL 13130345, at *1 (D. Colo. Apr. 3, 2014).  Rule 21 is entitled "Misjoinder and Nonjoinder of Parties" and provides that "the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  "Thus, to remedy misjoinder, the court has two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately."  *Gen. Steel*, 2014 WL 13130345, at *1 (quotation and alterations omitted) (quoting *Nasious v. City & Cnty. of Denver-Denver Sheriff's Dep't*, 415 F. App'x 877, 880–81 (10th Cir. 2011) (unpublished)).  "In considering whether a severance under Rule 21 is appropriate, the Court must first determine whether misjoinder has occurred."  *Id.* (citing *Schudel v. Miller*, No. 12-cv-01864-REB-KLM, 2013 WL 1815730, at *5 (D. Colo. Apr. 29, 2013)).  In *Chrysler*, the Tenth Circuit explained that, "where certain claims in an action are properly severed under Fed. R. Civ. P. 21, two separate actions result," and "a district court may transfer one action while retaining jurisdiction over the other."  *Chrysler*, 928 F.2d at 1519 ("The severed case is transferred in its entirety while the retained case remains in its entirety in the transferor court.").

PRG does not request that the Court sever USIC's claims as part of its motion. *See* Docket No. 84.  Instead, PRG advances its Rule 21 severance arguments in its reply, apparently to circumvent § 1404(a)'s requirement that the Court transfer the entire action.  *See Chrysler*, 928 F.2d at 1518 ("Section 1404(a) only authorizes the transfer of an entire action, not individual claims.").  The Court will not consider PRG's arguments

regarding severing USIC's claims.  *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir.

2016) ("a party waives issues and arguments raised for the first time in a reply brief."

(quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).  Instead, the Court

finds that PRG's motion to transfer impermissibly asks the Court to transfer some but

not all of USIC's claims.  Therefore, the Court will deny the motion.

Even if the Court were to consider PRG's Rule 21 arguments, the Court would

deny the motion.  No other party has been joined in this case.  The Court has rejected

PRG's arguments that the utility companies are required parties to this action.

Therefore, there has been no joinder or alleged misjoinder in this case such that Rule

21 provides a means of severing some of USIC's claims from its other claims.  *Gen.*

*Steel*, 2014 WL 13130345, at *1 ("In considering whether a severance under Rule 21 is

appropriate, the Court must first determine whether misjoinder has occurred.").  For this

additional reason, the Court will deny the motion to transfer.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Renewed Motion to Dismiss [Docket No. 86] is **GRANTED in**

**part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's second and fifth claims are **DISMISSED without**

**prejudice**.[8]  It is further

---

[8] In its response, USIC asks for leave to amend its complaint.  Docket No. 95 at
19–20.  Pursuant to the Local Rules, "[a] motion shall not be included in a response or
reply to the original motion.  A motion shall be filed as a separate document."
D.C.COLO.LCivR 7.1(d).  "Merely suggesting [plaintiff] should be allowed to amend if
the judge concludes [its] pleadings are deficient is insufficient.'"  *Requena v. Roberts*,
893 F.3d 1195, 1204 n.3 (10th Cir. 2018) (quoting *Garman v. Campbell Cty. Sch. Dist.*
*No. 1*, 630 F.3d 977, 986 (10th Cir. 2010)).  Plaintiff must, instead, "file[] a written

**ORDERED** that the Motion to Transfer Venue [Docket No. 84] is **DENIED**.  It is further

**ORDERED** that the Unopposed Motion to Set hearing Date and Oral Argument [Docket No. 98] is **DENIED as moot**.[9]


DATED September 3, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

motion for leave to amend, giving adequate notice of the basis of the proposed amendment." *Id.*

[9] USIC's motion for oral argument on PRG's motion to dismiss and motion to transfer is mooted by the Court's resolution of those motions.  *See* Docket No. 98.